IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 20, 2022

## WILLIAM E. BLAKE, JR. v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Knox County
No. 103710   Bob R. McGee and Kyle A. Hixson, Judges

————————————————————

### No. E2022-00125-CCA-R3-PC

————————————————————

William E. Blake, Jr., Petitioner, claims that he is entitled to post-conviction relief because he received ineffective assistance of counsel and because the jurors in his trial were not impartial and were influenced by their fear of the victim's family. Following a hearing on the merits, the trial court dismissed the Petition. Discerning no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Bailey M. Harned, Knoxville, Tennessee, for the appellant, William E. Blake, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Jonathan H. Wardle, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural Background

We glean from the record in the direct appeal that the Knox County Grand Jury indicted Petitioner for first degree murder in Count 1, aggravated assault in Count 2, possession of a handgun after having been convicted of a felony drug offense in Count 3, and possession of a handgun after having been convicted of a felony involving the use of a deadly weapon in Count 4. *State v. William E. Blake, Jr.*, No. E2012-02268-CCA-R3-CD, 2013 WL 4772997, at *1 (Tenn. Crim. App. Sept. 6, 2013), *perm. app. denied* (Dec.

10, 2013).  On June 24, 2009, a Knox County jury convicted Petitioner of second degree murder, aggravated assault, and possession of a handgun after having been previously convicted of a felony drug offense.  The trial court sentenced Petitioner as a Range II offender to thirty-five years at 100% service in Count 1, six years at 35% service in Count 2, and four years at 35% service in Count 3.  Count 2 and Count 3 were ordered to be served concurrently with one another, but consecutively to Count 1, for a total effective sentence of forty-one years to be served in the Tennessee Department of Correction.  *Id.* At trial, Petitioner was represented by trial counsel and co-counsel.  Co-counsel was appointed thirty-nine days before trial to assist trial counsel.  Co-counsel handled the direct appeal.  *Id.*  Trial counsel and co-counsel jointly will be referred to as "Counsel."

The following summary of the evidence is quoted from this court's direct appeal opinion:

> The offenses at issue occurred as the result of an argument that developed during a card game hosted by [Petitioner] at a friend's home.  After a verbal altercation with one of the guests, [Petitioner] left the premises.  [Petitioner] returned shortly, and the shooting victim, Nicholas Gillis, who lived in the home, approached [Petitioner] about the previous argument.  [Petitioner] ultimately shot the victim three times, once in the lower leg, once in the arm, and once in the face.  [Petitioner] testified that he was acting in self-defense and did not shoot directly at the victim.  On his way out of the home, [Petitioner] brandished his weapon at another guest.
>
> . . . .
>
> In this case, the testimony of all the eye[]witnesses, including [Petitioner], established that [Petitioner] shot the victim with a gun.  Multiple witnesses, including [Petitioner], also testified that [Petitioner] pointed a gun at Mr. Porter.  The evidence of guilt was overwhelming.

*Id*. at *9, 13.

### *Petition for Post-Conviction Relief*

On June 5, 2014, Petitioner filed a *pro se* Petition for Post-Conviction Relief (the Petition), claiming that the trial court illegally enhanced his sentence, that there was insufficient evidence to convict him of second degree murder, and that a conviction for both second degree murder and assault violated double jeopardy.  On July 1, 2014, then Criminal Court Judge Bob R. McGee, who had presided over the jury trial and sentencing, appointed post-conviction counsel for Petitioner and set an evidentiary hearing for October

22, 2014. The State filed its answer on July 11, 2014. The next document in the record on appeal is Judge McGee's April 27, 2018 order addressing Petitioner's "Motion for Determination of the Status of the Motion to Remove [Post-Conviction] Counsel of Record and Appointment of New [Post-Conviction] Counsel." Petitioner's motion is not in the record. The order noted that the post-conviction hearing was set for May 16, 2018, and that the court would address the appointment of new post-conviction counsel at that time. The appellate record does not include any order from a May 16, 2018 hearing.

On May 24, 2021, Criminal Court Judge Kyle A. Hixson entered an order setting the case for hearing on September 16, 2021. The order noted that no amended petition had been filed and provided "that [post-conviction] counsel for [P]etitioner SHALL, no later than August 6, 2021, file an amended petition or a written notice that no amendment will be filed." (Emphasis in original). On August 6, 2021, post-conviction counsel filed an amended petition, claiming that Counsel were ineffective by failing to (1) file a motion to continue his trial which resulted in Counsel's not being adequately prepared for trial; (2) renew the motion for mistrial after the trial court's "attempt at a curative instruction" concerning an "outburst" by a member of the victim's family during trial; (3) include the mistrial issue in his motion for new trial; (4) raise the sufficiency of the evidence to support aggravated assault in the motion for new trial; and (5) raise in the motion for new trial the trial court's denial of Petitioner's attempt to introduce evidence of the victim's character following testimony by a State's witness that the victim was a "good man." Petitioner also claimed that trial counsel, who was disbarred in 2014, engaged in conduct involving dishonesty, fraud, deceit, misrepresentation, and conduct prejudicial to the administration of justice. Finally, Petitioner claimed he was denied an impartial jury because the jurors were afraid of the victim's family.

### Post-Conviction Hearing

Petitioner did not present any witness testimony at the post-conviction hearing, relying instead on two exhibits: (1) a docket report from trial counsel's Chapter 7 bankruptcy proceeding filed on April 9, 2009, and closed on March 20, 2010; and (2) a copy of the Board of Professional Responsibility's "Findings of Fact, Conclusions of Law[,] and Judgment," filed September 11, 2014, disbarring trial counsel for submitting false billing statements to the Administrative Office of the Courts regarding work performed on appointed criminal cases in 2009 and 2010 and for lying about his gross income in his bankruptcy petition. Petitioner claimed that he was unable to locate trial counsel for his post-conviction hearing.

The State called co-counsel, who testified that he had practiced primarily criminal defense law for approximately thirteen years and had tried twenty-five to thirty jury cases when he was appointed on May 14, 2009, to assist trial counsel with Petitioner's case. Co-

counsel said that Petitioner had already "gone through two other attorneys" before trial counsel was appointed and that Petitioner's case was set for trial when he was appointed.

Co-counsel said that the trial court expected both him and trial counsel to represent Petitioner at the trial. Co-counsel and trial counsel met with Petitioner's prior attorney and discussed the case "at length" with him. Petitioner's prior attorney gave them "everything that he had," including the information that his investigator had uncovered. The investigator continued to work with Counsel until trial. Counsel received all of the discovery and met "a number of times" with Petitioner about the case. Co-counsel testified that he and trial counsel prioritized the case and put in "the time that we needed" to prepare for trial. Co-counsel stated that he and trial counsel "were ready" for the trial, which began on June 22, 2009.

Co-counsel was asked about an "outburst" by a member of the victim's family on the second day of trial when the State showed images of the victim's body at the crime scene. Co-counsel said he remembered someone saying, "Look what you did, Boo Boo." He explained that "Boo Boo" was a nickname by which Petitioner was known. Co-counsel thought the outburst was directed solely at Petitioner, and he did not perceive it to be a threat to anyone but rather an emotional reaction by a family member upon seeing a "picture of a loved one's body" at the crime scene. Although co-counsel raised an objection following the outburst, he did not "think there was a strong argument for a mistrial." He said the trial court instructed the individual who made the outburst to leave the courtroom and gave a curative instruction.

On cross-examination, co-counsel was asked about concerns expressed by jurors for their safety after the outburst. He said the trial court assured the jury that they did not need to be concerned about their safety because the courtroom had "pretty good security," extra officers outside, and metal detectors immediately outside the courtroom. Co-counsel said he thought the trial court "did as much or more than he needed to in terms of addressing any concern that the jury had for their safety." Co-counsel said he did not have any reason to suspect that the jury was not impartial.

Co-counsel testified that he did not see anything objectionable about one of the victim's friends referring to the victim at trial as "a good man." Co-counsel said he attempted to use the "good man" comment to bolster his attempt to introduce proof of the victim's criminal history, but the trial court did not allow that proof. Co-counsel did not think the "good man" comment was specific testimony about the victim's character, and he did not believe the issue merited being raised on appeal.

Co-counsel testified that he was aware of the disciplinary proceedings against trial counsel but understood the disciplinary case had to do with fee claims in other cases and

with trial counsel's failure to communicate with the Board. Co-counsel said that, to the best of his knowledge, the disciplinary proceedings had nothing to do with Petitioner's case and that he did not know of anything in trial counsel's representation of Petitioner that would have necessitated Board involvement. Co-counsel also stated that he did not think any of the things going on in trial counsel's life impacted Petitioner's case. Co-counsel said that trial counsel had a good relationship with Petitioner, was focused on the work, spent a lot of time working on the case, and was helpful to Co-counsel in trying the case.

### Post-Conviction Court's Order

On January 4, 2022, the post-conviction court entered a thorough written order setting forth its findings of fact and conclusions of law concerning the issues raised in the Petition and Amended Petition and argued at the hearing.

The post-conviction court accredited co-counsel's testimony that Counsel had sufficient time to prepare for trial. The court found that Petitioner "failed to provide any proof that there was a need for Counsel to file a motion to continue his case" and failed to show that "he was prejudiced by the lack of a continuance of his trial."

The post-conviction court found that, "[g]iven the brief nature of the outburst and the remedial measures taken by the trial court, there was simply no manifest necessity for a mistrial." The court again accredited co-counsel's testimony and found that the trial court "handled the situation appropriately and gave proper instructions to the jury" and that "there was no reason to renew the motion for a mistrial" or raise the issue in the motion for new trial or on appeal. The court found that Petitioner had failed to show that trial counsel or co-counsel acted deficiently in its handling of the motion for mistrial or by deciding not to further pursue the motion for mistrial after it was denied by the trial court. The post-conviction court further found Petitioner failed to show that the "brief outburst by a member of the victim's family prejudiced [P]etitioner in the eyes of the jury" and that the trial court "remedied the situation with an appropriate instruction."

The post-conviction court found that Petitioner "challenged the sufficiency of the aggravated assault conviction on appeal, albeit unsuccessfully" and that Petitioner "was not prejudiced by [C]ounsel's failure to include this issue in the motion for new trial."

The post-conviction court noted that the witness who described the victim as a "good man" was a closer friend of Petitioner than he was the victim and described Petitioner as being "funny" and "good people." The court also noted that co-counsel attempted to question the witness about "violent incidents from the victim's past" but that the trial court "correctly rebuffed this attempt." The court found that Counsel was not

deficient by deciding not to raise this issue in the motion for new trial and that Petitioner failed to show any prejudice.

The post-conviction court again accredited co-counsel's testimony that trial counsel "was focused on [P]etitioner's defense and that he performed adequately at trial." The court found that Petitioner "failed to make a showing that [trial counsel]'s ethical issues had any bearing on his work as [P]etitioner's lawyer." The court also found that Petitioner "failed to show that he was prejudiced by [trial counsel]'s unrelated ethical issues."

The post-conviction court dismissed the Petition, and Petitioner timely appealed.

### *Analysis*

On appeal, Petitioner claims the performance of Counsel was deficient: (1) due to trial counsel's ongoing personal and professional issues; (2) by failing to file a motion to continue so as to allow co-counsel adequate time to prepare for trial; (3) and by failing to take appropriate action in the face of the stated concerns by jurors for their safety. The State argues that the post-conviction court properly dismissed the Petition. We agree with the State.

To prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466

U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

Petitioner relied on two exhibits, a copy of trial counsel's Chapter 7 bankruptcy petition and the order of the Board of Professional Responsibility disbarring trial counsel, in support of his claim that trial counsel's performance was deficient due to "ongoing issues in his personal and professional life that were co-occurring with his representation" of Petitioner. Petitioner presented no proof to show how trial counsel's bankruptcy or disbarment had anything to do with the manner in which trial counsel represented Petitioner. The post-conviction court accredited co-counsel's testimony "that [trial counsel] was focused on [P]etitioner's defense and that he performed adequately at trial." The record fully supports the post-conviction court's findings that Petitioner "failed to make a showing that [trial counsel]'s ethical issues had any bearing on his work as [P]etitioner's lawyer" and that Petitioner "likewise failed to show that he was prejudiced by [trial counsel]'s unrelated ethical issues." *See Gevon C. Patton v. State*, No. E2017-00886-CCA-R3-PC, 2018 WL 1779382, at *20 (Tenn. Crim. App. Apr. 13, 2018), (affirming denial of post-conviction relief where "both attorneys were disbarred after the

[p]etitioner's trial," but the petitioner presented no evidence "at the post-conviction hearing showing that either attorney's disbarment was related to the attorneys' conduct and performance" in the petitioner's case), *perm. app. denied* (Tenn. Sept. 13, 2018); *Trinidad Martinez Flores v. State*, No. M2015-01504-CCA-R3-PC, 2016 WL 3621528, at *15 (Tenn. Crim. App. June 29, 2016) (affirming denial of post-conviction relief where the petitioner "failed to show a connection between [c]ounsel's subsequent disbarment and the [p]etitioner's claims of ineffective assistance of counsel"), *perm. app. denied* (Tenn. Oct. 19, 2016). Petitioner has failed to prove that Counsel's performance was in some way deficient as a result of trial counsel's personal and professional problems. Petitioner is not entitled to relief on this claim.

Petitioner claims that because co-counsel was appointed only thirty-nine days before trial, he did not have adequate time to prepare, and as a result, Petitioner was deprived of the level of competence required of an adequately prepared defense counsel. Petitioner argues that Counsel should have sought a continuance so that they could have been better prepared for trial. A petitioner is entitled to adequate preparation by counsel so that counsel can make informed decisions concerning "trial strategy" and make "tactical choices" during the trial. *Harris v. State*, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996) (stating that this court defers to trial strategy and tactical choices based upon adequate preparation). Adequate preparation does not mean perfect preparation. *Id.* To be effective, the representation of counsel, including preparation for trial, must be within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936; *Goad*, 938 S.W.2d at 369. "Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." *Baxter*, 523 S.W.2d at 935 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)). Co-counsel testified that he met with Petitioner's prior attorney and discussed the case "at length" with him and that Petitioner's prior attorney gave him "everything that he had," including the information that the investigator had uncovered. Co-counsel received all of the discovery and met "a number of times" with Petitioner about the case. Co-counsel testified that he and trial counsel put in "the time that we needed" to prepare for trial and that, by the trial date, they "were ready for trial" and a continuance was not necessary. The record fully supports the post-conviction court's finding that Petitioner "failed to provide any proof that there was a need for [C]ounsel to file a motion to continue his case." Petitioner has failed to show that Counsel were deficient in their preparation for trial. Petitioner is not entitled to relief on this claim.

Petitioner claims that Counsel were deficient because they "failed to recognize and take appropriate action in the face of the stated concerns by the jurors for their safety." Co-counsel testified that the comment, "Look what you did, Boo Boo," was directed solely at Petitioner. Co-counsel did not perceive the outburst to be a threat to anyone but rather an emotional reaction by a family member upon seeing a "picture of a loved one's body" at

the crime scene.  The post-conviction court found that Petitioner failed to show that the "brief outburst by a member of the victim's family prejudiced [P]etitioner in the eyes of the jury."  Co-counsel opined that the trial court "did as much or more than he needed to in terms of addressing any concern that the jury had for their safety," and the post-conviction court found that the trial court "remedied the situation with an appropriate instruction."  The record supports the post-conviction court's finding.  Petitioner also failed to provide any proof to show how the alleged "inaction and lack of concern" for the jury's safety by Counsel resulted in Petitioner's being denied an impartial jury.  Petitioner is not entitled to relief on this claim.

### *Conclusion*

We affirm the post-conviction court's dismissal of the Petition.

_____
ROBERT L. HOLLOWAY, JR., JUDGE